**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAIME TRAVERSO,

    Plaintiff,

    v.

                             Civil No. 26-435-BAH

WARDEN and
CENTURION HEALTH,

    Defendants.

**MEMORANDUM OPINION**

Plaintiff Jaime Traverso ("Traverso") filed a letter on February 2, 2026, which the Court

construed as a civil complaint, in which he states that he has been waiting for an urgent shoulder

surgery for over a month. ECF 1. Traverso filed a supplement in which he names Warden M.

Brittingham and Centurion Health ("Centurion") as Defendants. ECF 6. The Court issued an

Order requiring Centurion to show cause why Traverso should not be granted injunctive relief.

ECF 7. Centurion responded on April 28, 2026. ECF 14. At the Court's direction, ECF 15,

Centurion provided additional briefing on May 29, 2026, ECF 19. Traverso has also filed an

Emergency Motion to Expedite Order for Injunction. ECF 20. Centurion has opposed the Motion.

ECF 21. For the reasons discussed herein, Traverso's Motion and request for a preliminary

injunction will be denied.

The Court previously summarized Traverso's allegations as follows:

Traverso states that following two slip and fall incidents, he was advised that he
had a possible pinched nerve. ECF 1, at 1. He was told he would be scheduled to
see a neurosurgeon but this never occurred. *Id.* On December 30, 2025, Traverso
fell inside his cell and broke his shoulder. *Id.* at 2. Following an x-ray, he was
transferred to the Tidal Health Hospital but later returned because the hospital could
not perform the necessary surgery. *Id.* Traverso was still awaiting surgery almost
a month later and asserts that Dr. Donald Alves has been deliberately indifferent to

the urgency of his need for a shoulder replacement. *Id.* at 2. He seeks an order from this Court directing Centurion to have his shoulder surgery scheduled and completed as soon as possible.

ECF 15, at 1. The records provided by Centurion showed that the surgical providers were requiring various evaluations before Traverso's surgery could proceed. However, because it was unclear whether the providers were properly coordinating amongst each other or that the necessary evaluations were being ordered, the Court ordered Centurion to provide additional briefing on these issues. *Id.* at 4.

Centurion filed their additional briefing with a supplemental affidavit from Dr. Donal Alves, a physician employed by Centurion that provides medical services at the Eastern Correctional Institute. ECF 19-1, at 2 ¶ 2. Centurion clarifies at the outset, however, that it is not necessary for the providers treating Traverso's cervical spine issues and shoulder injury to coordinate with one another before Mr. Traverso undergoes surgery on his shoulder. ECF 19, at 2. In the affidavit, Dr. Alves explains that Traverso was being assessed by neurosurgery for neck pain prior to the fall injuring his shoulder. ECF 19-1, at 2 ¶¶ 4–5. Following the injury, Traverso was sent out for an orthopedic consultation at Johns Hopkins Hospital at which it was decided that in order for him to undergo surgical repair, he would need two clearances. *See id.* at 3 ¶¶ 6–8. First, Traverso needed to be cleared by neurology to confirm that he had adequate balance to tolerate the subsequent recovery from shoulder surgery, and second, he needed to be cleared by cardiology for the surgery itself. *Id.* ¶ 8.

Separate from the clearances needed for his shoulder surgery, Traverso also had a neurosurgery consultation during this time in relation to neck pain, at which point it was recommended he undergo surgery for "cervical spine disc disease." *Id.* ¶ 9. Traverso did not want to undergo that surgery, however. *Id.* The parallel tracks of these evaluations—and the similarity

2

of their names ("neuro")—appear to have created some confusion for Traverso, considering that when he was told that an order had been placed for Traverso to see a neurologist for shoulder surgery clearance, he was adverse to it since he had already expressed that he did not want the neurosurgery related to his spine. *See id.* ¶ 12.

Traverso's resistance prompted Dr. Alves to send a physical therapist's note to the Hopkins orthopedic team to inquire whether clearance by a neurologist was absolutely necessary to go forward with the shoulder surgery. *Id.* at 4 ¶ 13. The Hopkins orthopedic team informed Dr. Alves that it was. *Id.* Dr. Alves explains that neurology and neurosurgery are separate specialties and that Traverso's resistance delayed scheduling and therefore delayed the surgery. *See id.* at 3–4 ¶¶ 12–13. Centurion has since scheduled a neurology clearance appointment. *Id.* at 4 ¶ 14. It was originally scheduled for June 9, 2026, but was rescheduled for August 6, 2026 due to the neurologist being on medical leave. *Id.* Dr. Alves states that Centurion will be notified if an earlier appointment becomes available. *Id.*

Dr. Alves further states that because cardiology clearances have a limited life span, they must be performed close to the scheduled surgery. *Id.* ¶ 15. The appointment had been scheduled for June 23, 2026, but due to the delay in the neurology clearance, it will have to be rescheduled for a later date. *Id.* Dr. Alves explains that once Hopkins approves the neurology evaluation, the cardiology appointment will be scheduled. *Id.* ¶¶ 16–17. All the surgical prerequisites that can be scheduled have been, and Traverso remains in the infirmary on an effective pain management regimen. *Id.* ¶¶ 18–19.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *see also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying the four-prong

test for a preliminary injunction is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Based on the information provided by Centurion, it does not appear that Traverso is in imminent danger of irreparable harm. A movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812 (citation omitted). In another context, the Fourth Circuit has "held that the irreparable harm prong is satisfied where the plaintiff suffers from 'diminished access to high-quality health care suited to the individual plaintiff's needs.'" *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 449 (D. Md. 2025) (quoting *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 707 (4th Cir. 2019)). However, the record shows that Centurion is coordinating the various clearance appointments Traverso needs before his shoulder surgery, and further that Traverso is being provided quality healthcare in the interim. *See* ECF 19-1, at 5 ¶ 19 ("In the meantime, Mr. Traverso remains in the infirmary, able to

4

ambulate, with an effective pain management regimen."). Traverso has not represented that his pain and condition is not now being managed in the infirmary, nor has he indicated to the Court that he believes he is suffering from collateral severe or life-threatening ailments due to the delay. *Cf. Beck v. Hurwitz*, 380 F. Supp. 3d 479, 484–85 (M.D.N.C. 2019) (finding that plaintiff was "likely to suffer irreparable harm in that further delays may result in the spread of her cancer and potentially in the further deterioration of her condition and/or death" due to "defendants' failures to provide prompt and effective medical treatment for her cancer").

In the absence of an indication that Traverso's condition or health is deteriorating, the Court will not issue preliminary injunctive relief at this time. While the Court understands Traverso's frustration and discomfort while waiting, it appears based on the record currently before the Court that the clearances required by the Hopkins surgeons are the reason for the delay. Nothing in this record suggests that Traverso is at risk of suffering any further harm to his shoulder by continuing to wait in the infirmary, where his pain can be monitored and managed. At this stage, any alleged irreparable harm is only speculative and therefore Traverso is not entitled to preliminary injunctive relief. His Emergency Motion, in which he restates his need for injunctive relief, ECF 20, will thus be denied without prejudice.

## I.     Amend Complaint

Sections 1915(e)(2)(B) and 1915A of Title 28 of the United States Code require this Court to conduct an initial screening of this Complaint and to dismiss any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see also Lomax v. Ortiz-Marquez,* 590 U.S. 595 (2020). Here, the Complaint is

deficient because Traverso does not name appropriate defendants, nor does he explain how each of them participated in violating his right to adequate medical care under the Eighth Amendment.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  After a serious medical need is established, a plaintiff must show that a defendant was subjectively reckless in treating or failing to treat the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"  *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof

of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Traverso's supplement states that the defendants he sought to sue by filing his letter were Warden Brittingham, Centurion Health, and/or Dr. Donald Alves. *See* ECF 6. However, Traverso does not attribute any of the alleged wrongdoing in his complaint to Warden Brittingham, nor does he specify how Dr. Alves and/or Centurion acted recklessly with respect to the treatment of his injury. *See* ECF 1. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Traverso must plead facts which show that (1) his medical need is serious and (2) each of the defendants was personally deliberately indifferent to the need.

Because Traverso proceeds pro se, and has a potentially cognizable claim, he will be afforded an opportunity to file an amended complaint to provide additional facts supporting his claims and to name the appropriate defendants in a single pleading. *See Johnson v. Silvers*, 742 F.2d 823, 825 (4th Cir. 1984). In amending his complaint, Traverso should endeavor to provide the dates and locations of relevant events, name as defendants the individuals who personally participated in the alleged wrongdoing, explain how each named defendant acted or failed to act resulting in the violation of his constitutional rights, describe the harm he suffered as a result of their misconduct, and list the relief requested.

Any proposed amended complaint must conform to Federal Rule of Civil Procedure 8. Rule 8(a) requires that a complaint include a short and plain statement of the claim that shows the plaintiff is entitled to relief such that the defendant is fairly placed on notice of the claim and the "grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8(a). Rule 8(d)(1) requires that complaint allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that includes only legal conclusions, labels, or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 10(a) requires that the complaint identify each defendant allegedly responsible for the wrongdoing. *See* Fed. R. Civ. P. 10(a).

Traverso is reminded that the amended complaint will replace the current complaint. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (noting exception for purposes of appellate review of claims dismissed in original complaint that were not included in amended complaint)). Accordingly, Traverso must include all allegations against each of the defendants he names so that the amended complaint stands alone as the sole complaint in this case. Lastly, Traverso is warned that failure to file an amended complaint consistent with this order may result in the dismissal of the case with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1). If Traverso, while incarcerated, has three such actions or appeals dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)(ii) and 1915A(b)(1), his right to file a complaint in federal court without first paying the filing fee ($405) will be greatly curtailed. *See* 28 U.S.C. § 1915(g).

A separate implementing order will follow.

Dated: <u>June 12, 2026</u>

_____/s/_____

Brendan A. Hurson
United States District Judge
